J-S37016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1588 EDA 2021 |

Appeal from the Order Entered July 14, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0001443-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: G.S.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1589 EDA 2021 |

Appeal from the Decree Entered July 14, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-AP-0000274-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED JANUARY 19, 2022**

---

[*] Former Justice specially assigned to the Superior Court.

A.R. (Father) appeals decree terminating from the termination of his parental rights to his daughter, G.S.R. (Child), and the order changing Child's permanency goal to adoption.[1]  Upon review, we affirm.

Child was born in March 2014 and resided with her maternal grandmother (Grandmother) until September 7, 2019, when Grandmother suffered a heart attack, was taken to Temple University Hospital (along with Child), and passed away.  *See* Trial Court Opinion, 9/15/21, at 2-4.  Hospital staff and Philadelphia Police were unable to locate any of Child's relatives.  *Id.*  Consequently, the Philadelphia Department of Human Services (DHS) was contacted and obtained a protective custody order placing Child in foster care.  *Id.*

On October 9, 2019, following a hearing, the trial court adjudicated Child dependent, and transferred legal custody of Child to DHS.  *See* Trial Court Adjudication and Disposition, 10/9/19.   Father's whereabouts were unknown at the time of the hearing.[2]  On December 20, 2019, Father appeared at the initial permanency review hearing.  The court referred Father to the Clinical Evaluation Unit (CEU) for a drug screen, directed monitoring of Father's treatment at Hispanic Community Council, and required Father to complete three drug screens before the next court date.  N.T., 7/14/21, DHS Exhibit #2

_____

[1] The trial court also terminated the parental rights of A.B. (Mother), who has not appealed.

[2] Mother's whereabouts were also unknown.

- 2 -

(detailed docket) at 32. The court further ordered the Community Umbrella Agencies (CUA) to assist Father in locating appropriate housing. *Id.* Finally, the court granted Father weekly 2-hour supervised visits with Child. *Id.*

Initially, Child's permanency goal was reunification. Petition for Involuntary Termination of Parental Rights, 5/12/21, Exhibit A, ¶ m. At the permanency review hearing on December 20, 2019, CUA required Father to obtain three random drug screens prior to the next court date, and attend weekly 2-hour supervised visitations with Child. Permanency Review Order, 12/20/19. CUA was to assist Father in locating appropriate housing. *Id.* Although these goals remained in place throughout Child's dependency, Father failed to comply.

DHS filed its termination and goal change petitions on May 12, 2021. DHS sought termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8). On May 25, 2021, the trial court conducted a review hearing, as DHS had not timely served Father (and Mother) with the termination/goal change petitions.

The trial court conducted the termination/goal change hearing on July 14, 2021. Following the hearing, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § (a)(1), (2), (5) and (8) and (b), and changed Child's permanency goal to adoption. Father filed this timely appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father presents the following questions for review:

1. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights, where such determination as not supported by the clear and convincing evidence under the [A]doption [A]ct, 23 P[a].C.S.A. § [(a) (1)] (2), (5) and (8)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [Child,] as required by the [A]doption [A]ct, 23 P[a].C.S.A. § 2511(b)[?]

3. Whether the trial court abused its discretion in granting a goal change to adoption, where the goal change from reunification to adoption was not supported by clear and convincing evidence[?]

4. Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent and unrelenting effort to maintain a parent-child relationship with his [C]hild[?]

Father's Brief at 4.

In reviewing the termination of parental rights:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may

be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead[,] we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343-44 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for termination are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

"Satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." *See In re Z.S.W.*, 946 A.2d 726, 729 (Pa. Super.

2008) (citation omitted).  Instantly, we consider Section 2511(a)(1) and (b), which provide, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a)    General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

**(1)** The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

…

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1) …, the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d at 730.  The law "does not require that the parent demonstrate **both** a settled purpose of relinquishing parental claim … **and** refusal or failure to perform parental duties.  [P]arental rights may be

terminated pursuant to Section 2511(a)(1) if the parent **either** demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties." *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (emphasis added).

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

> We have explained:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental

- 7 -

rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with … her physical and emotional needs.

*Id.* (citations omitted).

Father claims the trial court improperly terminated his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1). Father's Brief at 12. He asserts DHS failed to prove, by clear and convincing evidence, that he demonstrated a settled purpose of relinquishing his parental rights, or failed or refused to perform his parental duties. *Id.* at 12-13. Father argues: "Though [he] was incarcerated and suffering from substance abuse problems for few [*sic*] months, [F]ather never intended to abandon [Child]." *Id.* at 13. According to Father, he has "bettered himself" by remaining sober and obtaining employment. *Id.* Father asserts he is working to obtain mental health treatment and wishes to re-establish regular contact with Child. *Id.* He states, "there is no affirmative evidence to suggest that he refused to parent [Child]." *Id.* at 12-13. Father claims to be working diligently toward completing his reunification goals, and asserts he has not relinquished his parental rights. *Id.* The record belies this argument.

The trial court discussed at length the evidence which led to its conclusion that termination was warranted under Section § 2511(a)(1). *See* Trial Court Opinion, 9/15/21, at 13-18. Child was in the care of DHS for 22 months prior to the filing of the termination petition. At the termination hearing, the trial court accepted into evidence Child's dependency docket, as

well as Father's "criminal abstract" showing a history of drug-related charges, and "an active criminal matter with theft related charges." N.T., 7/14/21, at 8. Child's case manager, Tamika Palmer, testified to being assigned to Child's case in September 2019, shortly after Child came into the care of DHS. *Id.* at 9. Ms. Palmer's testimony included her statement that Father "was only engaged in [Child's] life temporarily. He's unable to meet her needs and care for her." *Id.* at 18. The trial court, citing to notes of testimony, recounted additional evidence demonstrating that Father failed to perform parental duties. *See, e.g.,* Trial Court Opinion, 9/15/21, at 15-16 ("Ms. Palmer testified Father's whereabouts were unknown between January 3, 2020 to May 2021, … She noted Father was offered visits with [Child] in 2021, however he did not attend any of the visits. Father has not provided [] any proof of employment and has not … set up an appointment for an evaluation of his residence. Father has not provided any recent proof of drug/alcohol nor mental health treatment.); *id.* at 17 ("On cross-examination, … Father admitted he made no efforts to keep up to date with [Child's] educational, therapeutic and medical needs. He also admitted he never checked to see how his daughter was doing in her Foster Home."). Upon review, we discern no trial court error, and incorporate its findings and analysis in affirming termination under Section 2511(a)(1).

In his second issue, Father argues the trial court improperly terminated his parental rights pursuant to 23 Pa.C.S.A. § 2511(b). According to Father,

DHS failed to prove there are no family ties between Father and Child. Father's Brief at 18. Father claims the court "elected to terminate Father's parental rights on the heels of Father finally being able to become ready, willing, and able to parent, and without providing Father the opportunity to bond with [Child], given his compliance and progress." *Id.* Father states "though he was not in [C]hild's [*sic*] for a period of time, [] he loves his child very much." *Id.*

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but with regard to Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). Our Supreme Court explained:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Further, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her

parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2003) (citations omitted). "[W]e will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d at 732 (noting a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Our review discloses that the trial court's decision to terminate Father's parental rights under subsection (b) is supported by competent, clear, and convincing evidence. The trial court explicitly credited the testimony of Child's case manager, Tamika Palmer (Ms. Palmer). *See* Trial Court Opinion, 9/15/21, at 15 (stating the court heard "the credible, persuasive testimony from Ms. Palmer[.]"). The court summarized:

> Ms. Palmer testified that she has observed interactions between Father and [Child], and in her opinion, a parent-child relationship does not exist between them. Father has not been present during most of the time Child has been in care and has only visited her three times in that period. She has observed [] Child with her Foster Parent, and she opined the relationship between them is a very loving parent-child bond. [Child's] Foster Parent provides her with love, nurturing, guidance and support for her education. The Foster Parent also ensures the Child's medical needs are met. The Foster Parent wants to adopt Child. Ms. Palmer opined that Child would not suffer irreparable harm if … Father's parental rights were terminated. She further opined it would be in [] Child's best interest to be adopted, because she needs permanency, and someone to support her on a day to day basis.

*Id.* at 16 (citing N.T., 7/14/21, at 16-18). Upon review, the trial court did not err or abuse its discretion in finding that termination served Child's needs and welfare.

In his third issue, Father argues the trial court improperly changed Child's permanency goal from reunification to adoption. According to Father, the court failed to consider the statutory factors set forth at 42 Pa.C.S.A. § 6351, and evidence that Father is capable of caring for Child. Father's Brief at 20. Father acknowledges his history of drug abuse and mental health issues. *Id.* Notwithstanding these issues, Father claims he has worked to bond with Child, obtained mental health treatment, and maintained sobriety. *Id.* Father states:

> Just as [he] was able to complete his objectives, which would permit him to more fully bond with his daughter, the trial court stripped him of the opportunity to do so, and effectively severed any burgeoning bond between Father and [Child], or any potential bond which would have continued to develop[.]

*Id.*

We review the change of permanency goal for an abuse of discretion. *See In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008) ("In cases involving a court's order changing the placement goal from 'return home' to adoption, our standard of review is abuse of discretion.").

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which

- 12 -

necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations omitted).

Additionally, Section 6351(f.1) requires the trial court to make a determination regarding the child's placement goal:

**(f.1) Additional determination**.—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

...

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1).

Here, based on our disposition affirming termination, Father's issue concerning goal change is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) ("[E]ven if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's termination decrees.")).

Even if not moot, we would discern no abuse of discretion. The mandates of 42 Pa.C.S.A. § 6351(f) "clearly place the trial court's focus on

- 13 -

the best interests of the child." *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (citation omitted). "Safety, permanency, and well-being of the child must take precedence over **all** other considerations," *id.* (emphasis in original), and the trial court in this case properly concluded Father's claim lacked merit. *See* Trial Court Opinion, 9/15/21, at 18-20.

Finally, we have already addressed Father's fourth issue concerning "his genuine interest and sincere, persistent and unrelenting effort to maintain a parent-child relationship." Father's Brief at 4. However, to the extent the issue is separate and discrete, it is waived because Father does not address or argue it separately in the argument section of his brief. *See* Pa.R.A.P. 2119(a) ("the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular part treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *see also Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("arguments which are not appropriately developed are waived."). Accordingly, no relief is due.

Termination Decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2022

- 14 -